UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANTINE POULOPOULOS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>OPTICSPLANET, INC.,<br><br>　　　　　　Defendant. | CASE NO. 2:24-cv-02511-JLS-KS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT (DOC. 53)** |

1

Before the Court is Plaintiff's Motion for Preliminary Approval of Class Action Settlement. (Mot., Doc. 53.) Defendant OpticsPlanet, Inc. has not opposed. Having reviewed the papers and heard oral argument, and for the following reasons, the Court DENIES Plaintiff's Motion.

I.   **BACKGROUND**

Defendant OpticsPlanet, Inc. is an online retailer of sporting, shooting, hunting and outdoors products. (FAC ¶ 8, Doc. 40.) In March 2019, April 2023, and January 2024, Plaintiff Constantine Poulopoulos visited Defendant's website, www.opticsplanet.com, and purchased products sold by Defendant. (*Id.* ¶¶ 32–35.) On each of these occasions, Plaintiff visited a product page featuring a Reference Price, which was crossed out, and a lower Sale Price. (*Id.*) Plaintiff alleges that he "viewed and relied on the website's purported current and limited-time sale promotion," but Defendant's representation of such a promotion was misleading because "Defendant very rarely, if ever, offered any of the items sold on its website at the reference prices." (*Id.* ¶¶ 36, 38.)

On March 27, 2024, Plaintiff initiated this putative class action against Defendant, bringing claims pursuant to California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), California's Consumer Legal Remedies Act ("CLRA"), fraud, unjust enrichment, and negligent misrepresentation. (Ex. A to Notice of Errata, Compl., Doc. 5-1.) On June 3, 2024, Defendant filed a motion to dismiss the complaint. (MTD, Doc. 13.) The Court denied in part and granted in part Defendant's motion to dismiss on August 8, 2024, dismissing only the unjust enrichment claim. (Order Re MTD, Doc. 26.)

The parties engaged in a full-day mediation on December 17, 2024, but did not reach a settlement. (Wolf Decl. ¶¶ 16–17, Doc. 54.) On January 6, 2025, Plaintiff filed a First Amended Complaint. (FAC.) The FAC brings the same claims as Plaintiff's initial complaint, except unjust enrichment, and includes demands for "restitutionary disgorgement of all profits Defendant obtained from Plaintiff and the proposed Class,"

"[a]n injunction ordering Defendant to cease the false advertising," and "[a]n award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct." (*See id.*)  The FAC focuses heavily on the requirements of California Business & Professions Code § 17501, which provides in part as follows:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

The parties continued to engage in discovery—Defendant produced interrogatory responses, sales data, and information regarding its pricing practices, and Plaintiff reviewed the relevant documents.  (Wolf Decl. ¶ 15.)  The parties reached a Settlement Agreement and filed a Notice of Settlement on June 30, 2025.  (Wolf Decl. ¶ 17; Notice of Settlement, Doc. 51.)

### A. The Settlement Class

The Settlement Class is defined as "all persons in California who purchased one or more Products from www.OpticsPlanet.com, during the Class Period, at a discount from a higher reference price."  (Ex. 1 to Wolf Decl., Settlement Agreement ¶ 2.19, Doc. 54-1.)  The Class Period is from March 27, 2020 to the date of preliminary approval.  (Settlement Agreement ¶ 2.3.)

### B. The Settlement Agreement

The proposed Settlement Agreement provides for only injunctive relief.  (*See* Settlement Agreement.)  Accordingly, the Class Members will release claims for injunctive relief related to (1) the advertised discounts, (2) the advertised comparison between the sale prices and the regular, former, or market prices, and (3) the claims asserted in the complaint in this action.  (Settlement Agreement ¶ 2.15.)  The Class Members will not release any claims for monetary relief.  (Mot. at 14; Settlement Agreement ¶ 2.15.)

The Settlement Agreement requires that Defendant make certain pricing-related disclosures on its website. Currently, the website features products which "are represented as being discounted from a substantially higher reference price." (FAC ¶ 17.) Specifically, several product pages feature a greyed-out and crossed-out Reference Price, followed by a Sale Price which is lower than the Reference Price, and "Save __%":



(*Id.* ¶ 20.) The Settlement Agreement requires Defendant to implement the following two changes within three months of approval of the Settlement (Settlement Agreement ¶ 3.5):

(1) "Defendant shall not advertise reference prices without qualification or description. On the website, Defendant will conspicuously define and explain the meaning of the reference prices. Where the reference prices refer to the 'List Price' as defined by Defendant, the term 'List' or 'List Price' shall appear beside the reference price." (*Id.* ¶ 3.2.)

(2) "On product pages where a reference price is displayed, Defendant agrees to define and explain the reference price using an adjacent conspicuous hyperlink or icon entitled 'Details,' 'Pricing Policy,' or similar verbiage. Alternatively, the reference price itself may be hyperlinked.
Clicking and/or hovering a user's mouse pointer on the hyperlink shall lead to a page or popup conspicuously explaining the meaning of the reference price. The disclosure shall make clear that the reference price is not necessarily the former or regular price charged by OpticsPlanet, or the prevailing market price. The following example is a sufficient disclosure:

> The 'List Price' (located on product pages) represents the full retail price suggested by the supplier or manufacturer (MSRP),

4

> the price estimated based on comparable items offered elsewhere, a former price the item was offered for at OpticsPlanet, or the price estimated in accordance with standard industry practice. Most often, the 'List' Price is the MSRP. 'List' Prices may not necessarily reflect the product's prevailing market price or a former price on our website.
> When we offer products below the 'List' Price, you are paying the lower price noted. Products may be offered at the same or lower prices during future promotional events beginning on or after the last day or any advertised promotion. We encourage you to do your own comparison shopping to see what a great value we offer!" (*Id.* ¶ 3.3.)

Additionally, the Settlement Agreement provides that "Defendant may . . . remove the foregoing disclosures if Defendant . . . no longer advertises . . . reference prices [or] changes the meaning of . . . reference prices," and that "Defendant agrees that any future changes shall comply with Cal. Bus. & Prof. Code § 17501 so long as products are sold to California residents." (*Id.* ¶ 3.4.)

On August 21, 2025, Plaintiff filed the instant motion for preliminary approval of class settlement. (Mot.) Plaintiff requests that the Court certify the class for settlement purposes and preliminarily approve the Settlement. (*See id.*) Plaintiff avers that no notice to the Settlement Class is required because the Settlement involves only injunctive relief under Rule 23(b)(2). (*Id.* at 20.)

Plaintiff further indicates that he will file a separate motion for attorneys' fees, costs, and a service award. (*Id.* at 14.) Plaintiff will seek up to $275,000 in combined attorneys' fees and costs, and Defendant has agreed to not object to an award of $275,000 or less. (*Id.*; Settlement Agreement ¶ 4.1.) Plaintiff also intends to request a $5,000 service award. (Mot. at 14; Settlement Agreement ¶ 4.2.)

II. **LEGAL STANDARD**

To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In turn, review of a proposed settlement typically proceeds in two

5

stages, with preliminary approval followed by a final fairness hearing. Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation marks and citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from

class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*. (quotation marks and citations omitted).

### III. ANALYSIS

In evaluating the applicable factors, the Court concludes that the proposed Settlement should not be preliminarily approved. The Court is concerned primarily with the adequacy of the relief afforded to Class Members. "The amount offered in settlement is generally considered to be the most important consideration of any class settlement." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1011 (E.D. Cal. 2019); *see also Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) ("[T]he critical component of any settlement is the amount of relief obtained by the class.").

Although Class Members have allegedly suffered a concrete monetary harm—buying a product which was falsely advertised to be discounted—the Settlement provides them with only injunctive relief. In exchange, Class Members do not release any monetary claims. Plaintiff argues that the Settlement should be approved because "injunctive relief settlements are . . . common and favored where, as here, individual class members are not releasing their claims for money damages and the injunctive relief addresses the allegedly unlawful practices." (Mot. at 18.) The Court rejects this as a basis for approval.

First, Plaintiff seems to take the position that, because Class Members are not releasing any damages claim, a settlement that includes nothing for damages is *per se* reasonable. That is the only plausible explanation as to why Plaintiff's motion neither addresses *why* he has abandoned any recovery for the alleged economic harm class members suffered by receiving "a product worth less than the price paid" (FAC ¶ 49), nor provides the Court with any of the standard information necessary to determine if a zero-dollar recovery is reasonable. *See e.g.*, *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) (Staton, J.) ("To determine whether the amount offered in settlement is valued fairly, district courts—including this Court—require that motions for

7

preliminary approval of class settlements include estimates of the defendant's maximum potential liability.")

However, that the Settlement does not require Class Members to release their damages claims is not a sufficient basis for the Court to approve a settlement that offers no monetary relief. While Class Members retain the right to bring individual damages claims, given the amount at stake on an individual basis in this case, they would have little incentive to do so, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal quotation marks and citation omitted), meaning that a class action such as this one may be their only avenue for monetary relief. The Court is therefore reticent to approve a settlement providing only injunctive relief.

Further, a determination that an injunctive relief-only settlement is *not* reasonable is supported by the many recent class action settlements involving false discounting that have included damages. *See, e.g.*, *Carvalho v. HP, Inc.*, 2025 WL 588674 (N.D. Cal. Feb. 24, 2025) (approving a $4 million settlement fund); *Barr v. SelectBlinds LLC*, 2024 WL 5162609 (C.D. Cal. Mar. 4, 2024) (approving a settlement where the defendant would pay $8.5 million to class members, who would receive $75 each on average); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) (awarding class members $10 vouchers and injunctive relief); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244 (C.D. Cal. 2016) (approving a settlement with a fund of $50 million and injunctive relief); *Horosny v. Burlington Coat Factory of California, LLC*, 2016 WL 10586285 (C.D. Cal. Oct. 27, 2016) (approving a settlement agreement where class members stand to receive over $27 million in certificates, redeemable for $7.50 credit each, and injunctive relief); *Gattinella v. Kors*, 2016 WL 690877 (S.D.N.Y. Feb. 9, 2016) (approving a settlement requiring Michael Kors to modify its sales practices and pay $4.8 million into a settlement

fund). While there may be reasons specific to this case as to why damages were unobtainable, Plaintiff has offered none.

Moreover, the Court cannot conclude that injunctive relief will be meaningful to the Class Members. First, Plaintiff's counsel confirmed at oral argument that Plaintiff did not conduct any discovery as to the repeat nature of Defendant's customers.[1] Defendant sells sporting, shooting, hunting and outdoors products, and there has been no showing that Class Members have any intent of making additional purchases in the future. Hence, if all that is provided in settlement is prospective relief, there may be little to no benefit to the class. *See Grady*, 671 F. Supp. 3d at 1073 ("[F]or a court to be able to approve a settlement, 'the parties must have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement.'") (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)).

Second, the injunctive relief itself does not appear to remedy the problem identified in the FAC. The relief mandates that Defendant make two concrete changes. First, "[w]here the reference prices refer to the 'List Price' as defined by Defendant, the term 'List' or 'List Price' shall appear beside the reference price." (Settlement Agreement ¶ 3.2.) Second, "[o]n product pages where a reference price is displayed, Defendant agrees to define and explain the reference price using an adjacent conspicuous hyperlink or icon entitled 'Details,' 'Pricing Policy,' or similar verbiage. . . . Clicking and/or hovering a user's mouse pointer on the hyperlink shall lead to a page or popup conspicuously explaining the meaning of the reference price." (*Id.* ¶ 3.3.) Additionally, the Settlement Agreement states that "Defendant agrees that any future changes shall comply with Cal. Bus. & Prof. Code § 17501 so long as products are sold to California residents." (*Id.* ¶ 3.4.)

---

[1] The motion does not identify any significant investigation or discovery in this case. Rather, it appears that Defendant responded to interrogatories, informally produced "summary sales data," and responded to Plaintiff's questions about its "pricing practices." (*See* Wolf Decl. at ¶ 15.)

9

The Court notes that the specific changes mandated by the Settlement do not require Defendant to stop the practice of using crossed-out Reference Prices or to refrain from claiming that the consumer will "save X%" from that Reference Price, but rather require only that Defendant provide consumers with more information about its Reference Prices. Even accepting that additional disclosures could be sufficient to address any misleading discounting practices, the Court questions the efficacy of the specific disclosures outlined in the Settlement.

In particular, it is unclear why labelling the crossed-out price as a "List Price" would solve the problem. The purpose of Section 17501 is to prevent advertising that gives the impression that the goods were formerly sold at a higher price unless those goods actually were sold at that price in the manner described in the statute. And the regulations make clear that the specific language used is not dispositive:

> The term "former price" as used in Section 17501 of the Business and Professions Code and in this article ***includes but is not limited to*** the following words and phrases when used in connection with advertised prices; "formerly--," "regularly--," "usually--," "originally--," "reduced from_____," "was _____ now_____," "_____% off."

Cal. Code Regs. tit. 4, § 1301 (emphasis added). As courts have noted, "Section 17501 does not require explicit labelling. A reasonable consumer does not need language such as, 'Formerly $9.99, Now 40% Off $9.99,' or, '40% Off the Former Price of $9.99,' to reasonably understand '40% off' to mean 40% off the former price of the product." *Vizcarra v. Michaels Stores, Inc.,* 710 F. Supp. 3d 718, 725 (N.D. Cal 2024) (internal quotation marks and citation omitted). Plaintiff has failed to show that changing the advertisement to call the Reference Price a "List Price" offers real relief that complies with California law.

And while Defendant agrees to "conspicuously explain[] the meaning of the reference price" in addition to displaying the words "List Price," the Settlement allows

10

Defendant to include such an explanation on an entirely different webpage from the webpages featuring Defendant's products. (*See* Settlement Agreement ¶ 3.3 ("Clicking . . . a user's mouse pointer on the hyperlink shall lead to a page . . . conspicuously explaining the meaning of the reference price.").) The Court therefore questions whether placing the burden on users to navigate to a different webpage explaining Defendant's pricing policy amounts to a "conspicuous" explanation at all.$^2$

Finally, even if users do read the pricing policy explanation, it does not appear to give them meaningful information upon which they can base their purchasing decisions. The Settlement Agreement provides that the following is an example of a sufficient explanation:

> The 'List Price' (located on product pages) represents the full retail price suggested by the supplier or manufacturer (MSRP), the price estimated based on comparable items offered elsewhere, a former price the item was offered for at OpticsPlanet, or the price estimated in accordance with standard industry practice. Most often, the 'List' Price is the MSRP. 'List' Prices may not necessarily reflect the product's prevailing market price or a former price on our website.
>
> When we offer products below the 'List' Price, you are paying the lower price noted. Products may be offered at the same or lower prices during future promotional events beginning on or after the last day or any advertised promotion. We encourage you to do your own comparison shopping to see what a great value we offer!"

(Settlement Agreement ¶ 3.3.) Such a disclosure does not allow users to readily understand the meaning of the Reference Price for the product they are interested in purchasing: it could be the MSRP, the estimated price of a comparable item, a former

---

$^2$ If the purported conspicuous explanation is not contained in the advertisement itself, it likely would not comply with Section 17501. Cal. Bus. & Prof. Code § 17501 ("No price shall be advertised as a former price of any advertised thing . . . unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated *in the advertisement*.") (emphasis added).

price, or an estimated price in accordance with industry practice. Moreover, Defendant's website already features a similar explanation on its Pricing FAQ page:

> "OpticsPlanet makes it best effort to ensure the 'List Price' (located on product pages) represents the full retail price suggested by the supplier or manufacturer, the price estimated based on comparable items offered elsewhere, a former price the item was offered for by OpticsPlanet, or the price estimated in accordance with standard industry practice."

(*See* MTD at 9 (referencing *See All About Pricing, Promotions, and Deals*, OpticsPlanet, https://www.opticsplanet.com/pricing-promotions-faq.html).) In light of the similarities between Defendant's present disclosure and the Settlement's approved disclosure, it is unclear what additional value the Settlement would add. Indeed, the Court has grave concerns that approving this Settlement would be placing the Court's imprimatur on a potentially unlawful advertising scheme while also barring the Class Members from seeking different or additional injunctive relief.

Although the Court understands that "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class," it has identified too many deficiencies with the instant proposed Settlement to find it fair, reasonable, and adequate. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). The Court further notes that while the Settlement Agreement does not provide Class Members with any monetary relief, it does provide that Defendant will not object to Plaintiff's request for attorneys' fees, costs, and expenses of up to $275,000. (Settlement Agreement ¶ 4.1.) Such a disparity between the non-monetary relief afforded to Class Members and the fees class counsel negotiated for themselves further confirms the Court's determination that the proposed Settlement is not adequate. *See In re Bluetooth*, 654 F.3d at 946–47 ("Prior to class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. . . . A few [signs of collusion] are . . . when the class received no monetary distribution but class counsel are amply rewarded

12

[and] when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]") (internal quotation marks and citations omitted).

## IV.  CONDITIONAL CLASS CERTIFICATION AND NOTICE PROCEDURES

Plaintiff also seeks conditional certification of the class for settlement purposes under Rule 23(a) and 23(b)(2), and avers that notice to Class Members is not required under Rule 23(b)(2).  (Mot. at 20–26.)  Because the Court denies preliminary approval of the settlement, the Court DECLINES to determine, at this time, (1) whether conditional certification of the class for settlement purposes is appropriate or (2) whether the proposal to dispense with notice is appropriate.  *See Munday v. Navy Fed. Credit Union*, 2016 WL 7655796, at *5 (C.D. Cal. May 26, 2016) (Staton, J.); *Grady*, 671 F. Supp. 3d at 1084.

## V.  CONCLUSION

Because Plaintiff has failed to show that the proposed settlement is "fair, reasonable, and adequate," the Court DENIES Plaintiff's Motion for Preliminary Approval of Class Settlement.  Within **sixty (60) days** from the issuance of this order, the parties shall file either a renewed motion for preliminary approval or a motion for class certification.

DATED:  November 19, 2025

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

13